## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

| | | |
|---|---|---|
| **THE ATTORNEY GENERAL OF TEXAS, and THE SECRETARY OF STATE OF TEXAS,** | § § § | |
| *Plaintiffs,* | § | **CIVIL ACTION NO. 4:24-CV-49** |
| **v.** | § § | |
| **ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; UR M. JADDOU, in her official capacity as Director of U.S. Citizenship and Immigration Services; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,** | § § § § § § § § § § | |
| *Defendants.* | § | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

1. Federal and Texas law prohibit non-U.S.-citizens from voting, but non-U.S.-citizens can nevertheless register to vote. And Federal law prohibits Texas from requiring documentary proof of citizenship from people seeking to register to vote. But federal law requires the Department of Homeland Security ("DHS") to respond to inquiries from appropriate Texas authorities about the citizenship status of persons registered to vote. DHS has failed to comply with that duty.

2. Therefore, the Attorney General of Texas and the Secretary of State of Texas hereby request that the Court order Defendants to comply with federal law and supply Texas the information they are required to supply in order to secure the integrity of Texas elections.

3.    Although federal and state law prohibit non-citizens from voting, federal law paradoxically creates opportunities for non-citizens to illegally register to vote while prohibiting States from requiring voters to have proof of citizenship to vote in federal elections—a common sense measure to identify illegal registration. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

4.    Under any circumstances, this federal prohibition against citizenship verification makes little sense, but it is especially troubling given the current scale of the illegal immigration crisis. Yet Congress has not corrected this statutory defect because the Senate has not passed the Safeguard American Voter Eligibility Act ("SAVE Act"), which would allow states to ensure that votes are being cast legally by eligible voters. For these reasons, Texans are increasingly concerned about the possibility of non-citizen voting, and the Attorney General of Texas and the Secretary of State of Texas have the responsibility to uphold the integrity of Texas's elections.

5.    There are over 450,000 people registered to vote in Texas whose citizenship cannot be verified using existing state resources.

6.    8 U.S.C. § 1373(c) requires the federal government to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. §§ 1373(a) and 1644 provide, "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual," and that "no State or local government entity may be prohibited, or in any way restricted, from sending to

or receiving from [federal information regarding the immigration status, lawful or unlawful, of an alien in the United States."

7.    But Defendants refuse to comply with law and answer valid requests for information from the Attorney General of Texas and the Secretary of State of Texas for the citizenship status of the over 450,000 people on Texas's voter rolls for whom the State cannot verify their citizenship status using existing sources.

## I. Parties

8.    Plaintiff the Attorney General of Texas is an agency of the State of Texas. The Attorney General of Texas has authority to investigate to determine if criminal activity occurred in connection with an election. Tex. Elec. Code § 273.001(b). Consequently, Defendants "shall respond to an inquiry by [the Attorney General of Texas] [when he] seek[s] to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

9.    Plaintiff the Secretary of State of Texas is an agency of the State of Texas. Federal law requires the Secretary of State of Texas to perform list maintenance with respect to its voter registration list and to perform list maintenance "in a matter that ensures that … voters … who are not eligible are removed" from the list. 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B); *see also* 52 U.S.C. § 20507 (recognizing a state's obligation to conduct programs to remove ineligible voters from the rolls). Consequently, Defendants "shall respond to an inquiry by [the Secretary of State of Texas] [when she] seek[s] to verify or ascertain the citizenship or immigration status of any

individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

10.    Defendant Alejandro Mayorkas is the Secretary of Department of Homeland Security. He is sued in his official capacity.

11.    Defendant Department of Homeland Security ("DHS") is an agency of the United States Government. DHS is responsible for providing citizenship and immigration status information to States under 8 U.S.C. § 1373(c). *See also* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note (transferring responsibility for complying with 8 U.S.C. § 1373(c) from the Immigration and Naturalization Service to the Department of Homeland Security).

12.    Defendant Ur M. Jaddou is Director of U.S. Citizenship and Immigration Services. She is sued in her official capacity.

13.    Defendant United States Citizenship and Immigration Services ("USCIS") is the agency within DHS that is responsible for providing citizenship and immigration status information to States under 8 U.S.C. § 1373(c).

## II.  Jurisdiction, Standing, and Venue

14.    The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1346, 1361, and 2201–02, and 5 U.S.C. §§ 702–06.

15.    The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

16.    Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

17.   Plaintiffs have standing because Defendants have inflicted injury to Texas's sovereign interest in creating and enforcing a legal code that a ruling in their favor would redress.

18.   Plaintiffs also have standing because they have suffered an informational injury. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998). The informational injury harms them and a ruling in Plaintiffs' favor would redress the injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021).

## III. Background

### A.  Legal Background

19.   Together, federal and state law prohibit non-U.S. citizens from registering to vote in any election in Texas.

20.   Federal law provides that "[i]t shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for" federal office. 18 U.S.C. § 611(a).

21.   Accordingly, federal laws governing registration to vote require the form for federal elections to state "each eligibility requirement (including citizenship)," 52 U.S.C. § 20504(c)(2)(C)(i) and make it a crime to lie about citizenship when registering to vote "in any Federal, State, or local election," 18 U.S.C. § 1015(f). *Cf.* 8 U.S.C. § 1182(a)(10)(D).

22.   Texas law, likewise, provides that "to be eligible to vote in an election in this state" a person must be "a United States citizen." Tex. Elec. Code §§ 11.001(a)(1), (a)(2), 13.001(a)(2); *see also* Tex. Const. art. VI, § 2.

23.    In Texas, it is a state jail felony to lie about citizenship status when registering to vote, Tex. Elec. Code § 276.018.

24.   In Texas, it is a second-degree felony for a non-U.S. citizen to cast a vote, Tex. Elec. Code § 64.012.

25.   Plaintiff the Attorney General of Texas has authority to investigate to determine if criminal activity occurred in connection with an election. Tex. Elec. Code § 273.001(b). That authority includes the authority to investigate if non-U.S.-citizens have registered to vote in Texas and the authority to investigate whether non-U.S.-citizens have voted in Texas.

26. Plaintiff the Secretary of State of Texas is required by federal law to perform list maintenance with respect to its voter registration list and to perform list maintenance "in a matter that ensures that … voters … who are not eligible are removed" from the list. 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B); *see also* 52 U.S.C. § 20507 (recognizing a state's obligation to conduct programs to remove ineligible voters from the rolls).

27.   Federal law prohibits States from requiring voters to have proof of citizenship to vote in federal elections. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

28.   But federal law entitles state and local officials to receive citizenship status information from USCIS for any purpose authorized by law. Federal law requires USCIS to fulfill such information requests:

> The Immigration and Naturalization Service [now DHS and USCIS] shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

52 U.S.C. § 1373(c).

29.   Additionally, federal law prohibits the federal government from preventing state governments from requesting citizenship information from USCIS:

> Notwithstanding any other provision of Federal, State, or local law, a Federal . . . government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service [now DHS and USCIS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a); see also *id.* § 1644 (similar).

30.   In other words, the Attorney General of Texas and the Secretary of State of Texas may request citizenship information of persons on Texas's voter registration list "for any purpose authorized by law," and Defendants must provide it.

**B. Factual Background**

31.   Texans are required to provide proof of citizenship or lawful presence when they obtain a driver's license or state-issued identification card.

32.   When Texans attempt to register to vote through the Texas Department of Public Safety, their citizenship status is automatically checked via routine procedures.

33.   The Texas Department of Public Safety obtains citizenship status about people with a Texas driver's license or ID from DHS and USCIS as a matter of routine.

34.   The Secretary of State of Texas compares citizenship data from the Texas Department of Public Safety against the statewide voter registration list and sends to county voter registrars for investigation of eligibility. *See* Tex. Elec. Code §§ 16.0332, 18.068.

35.   In addition, Texas law requires registrars to review their voter registration records and send notices to any voter whom the registrar reasonably believes—based on information obtained through any lawful means—is not eligible for registration, including due to non-U.S. citizenship. *See* Tex. Elec. Code § 16.033.

36.   This check is necessary because non-U.S. citizens lawfully present cannot legally vote but can lawfully apply for and receive a driver's license or ID card.

37.   But over 450,000 people who did not use a Texas-issued driver's license or ID card to register are registered to vote in Texas.

38. Those voters have never had their citizenship status verified.

39. Thus, it is possible for a non-U.S.-citizen to register to vote without using a driver's license or ID card.

40. Yet federal law prohibits Texas from requiring proof of citizenship of the hundreds of thousands of people who did not use a driver's license or ID card to register to vote in Texas.

41. Consequently, the Secretary of State of Texas and the Attorney General of Texas have exercised their rights to obtain citizenship information under 8 U.S.C. § 1373(c).

42. On September 18, 2024, the Secretary of State of Texas wrote Defendant Jaddou:

[P]ursuant to 8 U.S.C. § 1373, I hereby request your assistance in verifying or ascertaining the citizenship or immigration status of certain individuals on the State of Texas's voter rolls. The Office is in the process of compiling a list of individuals on Texas's voter rolls whose citizenship cannot be verified using existing state sources. Please inform my staff immediately of the appropriate procedures for the Office to provide you with identifying information for these individuals. I ask that you provide all of the requested citizenship information by October 2, 2024.

Exhibit 1.

43. The "purpose authorized by law" is the Secretary of State of Texas's duties to perform list maintenance.

44. On October 10, 2024 Defendant Jaddou responded that the "Systematic Alien Verification for Entitlements (SAVE) program is the most secure and efficient way to reliably verify an individual's citizenship or immigration status, including for verification regarding voter registration and/or voter list maintenance," and maintained that USCIS "currently cannot offer an alternative process to any state." Exhibit 2.

45. But pointing to the SAVE system does not fulfill the Secretary of State of Texas's September 18, 2024 request.

46. Nor, more importantly, does Defendant Jaddou's response satisfy USCIS's unambiguous obligations under federal law.

47. For one thing, the SAVE program is designed to confirm a person's lawful presence in the United States; it is not an adequate tool, on its own, for a state seeking to verify the citizenship status of an individual on the voter rolls.

48. In addition, the SAVE service requires the use of, among other things, a "unique DHS-issued immigration identifier"—information that is not maintained by, or readily available to, the Secretary of State of Texas or Texas's voter registrars.

49. Texas's statewide voter registration system does not contain any "DHS-issued immigration identifier[s]." Even if the Secretary of State of Texas could obtain this data from the Texas Department of Public Safety, that effort would be limited to individuals who provided such information to obtain a driver license or personal identification card—and thus would not encompass individuals for whom there is no Texas-issued driver license or ID card number in Texas's voter registration system.

50. On top of that, USCIS charges users a fee for each verification submitted to the SAVE system. USCIS acknowledges that these fees—which Plaintiffs would have to pay simply to obtain data within the federal government's control—will more than double over the next three years. See U.S. Citizenship & Immigration Servs., SAVE Transaction Charges, https://www.uscis.gov/save/about-save/save-transaction-charges (last visited Oct. 21, 2024).

51. On October 7, 2024, the Attorney General of Texas asked Defendant Jaddou for current citizenship or immigration status information from USCIS for the over 450,000 people who are currently registered to vote in Texas, but their citizenship status is unconfirmed, and there is no

way of confirming their citizenship status except via the procedure in 8 U.S.C. § 1373(c). The Attorney General of Texas requested that this information be provided by October 17, 2024. Exhibit 3 (list excluded).

52.   The Attorney General of Texas acknowledged in his letter, "Although I have no doubt the vast majority of the voters on the list are citizens who are eligible to vote, I am equally certain that Texans have no way of knowing whether or not any of the voters on the list are noncitizens who are ineligible to vote."

53.   The "purpose authorized by law" was investigating to determine if criminal conduct occurred in connection with an election.

54.   The Attorney General of Texas did not ask for verification of the citizenship of anyone whose voter registration records contains a driver's license or state-issued identification number.

55.   Defendant Jaddou has not yet responded to the Attorney General of Texas's letter.

## IV. Claims for Relief

### COUNT 1
### Violation of APA, 5 U.S.C. § 706(1):
### Agency Action Unlawfully Withheld or Unreasonably Delayed

56.   All foregoing allegations are repeated and realleged as if fully set forth herein.

57.   Under the Administrative Procedure Act (APA), a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further requires that an agency "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b).

58.   Under 8 U.S.C. § 1373(c), Defendants are required to "respond to an inquiry by [Plaintiffs] seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

59.   Plaintiffs have made such inquiries to Defendants.

60.   Defendants' failure to timely provide information in response to Plaintiffs' inquiries amounts to agency action unreasonably delayed or unlawfully withheld within the meaning of 5 U.S.C. § 706.

### COUNT 2
### Violation of APA, 5 U.S.C. § 706(2)(A), (C)
### Agency Action Not in Accordance With Law and in Excess of Statutory Authority

61.   All foregoing allegations are repeated and realleged as if fully set forth herein.

62.   Under the APA, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

63.   Defendants' decision to use only the SAVE program to respond to inquiries under 8 U.S.C. § 1373(c)—even though they possess additional information not available through that program, and even though Plaintiffs do not have the information necessary to make requests for information through that program—is contrary to their statutory obligations.

64.  8 U.S.C. § 1373(c) requires Defendants to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . *by providing the requested verification or status information.*" 8 U.S.C. § 1373(c) (emphasis added); see also 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and DHS regarding immigration status of aliens).

65.  These requirements apply to Plaintiffs' request to verify immigration or citizenship status of any person, whether or not that person's immigration or citizenship status can be verified through the SAVE program. Defendants' decision to limit their responses to inquiries that can be made via the SAVE program violates 8 U.S.C. § 1373(c).

**COUNT 3**
**Declaratory Judgment, 28 U.S.C. § 2201(a):**
**Defendants Owe Nondiscretionary Duties to Plaintiffs**

66.  All foregoing allegations are repeated and realleged as if fully set forth herein.

67.  Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

68.  Federal law states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

69.  When a state agency requests verification of an individual's citizenship or immigration status, Defendants owe a nondiscretionary duty to "provid[e] the requested verification or status information." 8 U.S.C. § 1373(c).

70. Because Defendants have received inquiries from Plaintiffs to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law, Plaintiffs are entitled to a declaration that Defendants must "respond" to the inquiry "by providing the requested verification or status information." 8 U.S.C. § 1373(c).

### COUNT 4
### Mandamus, 28 U.S.C. § 1361:
### Defendants Owe Nondiscretionary Duties to Plaintiffs

71. All foregoing allegations are repeated and realleged as if fully set forth herein.

72. Under the Mandamus Act, the court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

73. Defendants owe Plaintiffs a clear nondiscretionary duty to respond to their inquiries to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law. 8 U.S.C. § 1373(c).

74. As a direct and proximate cause of Defendants' failure to provide access, Plaintiffs have been irreparably harmed and continue to suffer ongoing irreparable harm, both to their sovereign interests in creating and enforcing a legal code and to their right to information.

75. Defendants' failure to comply with their nondiscretionary duty is preventing Plaintiffs from exercising their duties.

76. Because Plaintiffs have "a clear right to the relief sought," Defendants have "a clear duty to act," and "no other adequate remedy is available," mandamus relief is warranted. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361," is appropriate where plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty").

77. A writ of mandamus should issue compelling Defendants to provide verification of the citizenship or immigration status of the persons listed in the Attorney General of Texas's October 7, 2024 letter.

## V. DEMAND FOR RELIEF

Plaintiffs respectfully request that the Court:

a. Order Defendants to promptly provide the immigration and citizenship status of each person on the list provided by the Attorney General of Texas in its October 7, 2024 letter (Exhibit 3);

b. Declare that Plaintiffs are entitled to prompt responses to inquiries under 8 U.S.C. § 1373;

c. A writ of mandamus ordering Defendants to promptly provide the immigration and citizenship status of each person on the list provided by the Attorney General of Texas in its October 7, 2024 letter (Exhibit 3);

d. Grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

e. Grant Plaintiffs such other relief as the Court deems just and proper and as justice so requires.

Dated: October 22, 2024.                    Respectfully submitted.

                                            **KEN PAXTON**
                                            Attorney General of Texas

                                            **BRENT WEBSTER**
                                            First Assistant Attorney General

                                            **RALPH MOLINA**
                                            Deputy First Assistant Attorney General

                                            **JAMES LLOYD**
                                            Deputy Attorney General for Civil Litigation

                                            **KIMBERLY GDULA**
                                            Chief, General Litigation Division

                                            */s/ WILLIAM D. WASSDORF*
                                            **WILLIAM D. WASSDORF**
                                            Deputy Chief, General Litigation Division
                                            Texas Bar No. 24103022

                                            Office of the Attorney General
                                            General Litigation Division
                                            P.O. Box 12548, Capitol Station
                                            Austin, Texas 78711-2548
                                            (512) 936-1666
                                            Will.Wassdorf@oag.texas.gov

                                            **COUNSEL FOR PLAINTIFFS THE ATTORNEY
                                            GENERAL OF TEXAS AND THE SECRETARY OF
                                            STATE OF TEXAS**