**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| THE ATTORNEY GENERAL OF TEXAS AND THE SECRETARY OF STATE OF TEXAS, <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY, *et al.* <br><br> *Defendants.* | CIVIL ACTION NO. 4:24-cv-49-DC-DF |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**

TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................ iii

Introduction and Background ........................................................................................1

Statement of Facts Necessary for Resolution ............................................................1

Standard of Review ......................................................................................................... 2

Argument and Authorities ..............................................................................................3

    I.   Defendants' voluntary decision to update SAVE is insufficient to moot this case..............4

    II.  The doctrine of prudential mootness does not apply...........................................................9

Conclusion ...................................................................................................................... 11

Certificate of Service......................................................................................................12

## TABLE OF AUTHORITIES

Page

**CASES**

*Ali v. Cangemi,*
  419 F.3d 722 (8th Cir. 2005) ...................................................................................3

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ........................................................................... passim

*Chamber of Com. v. U.S. Dep't of Energy,*
  627 F.2d 289 (D.C. Cir. 1980) ..............................................................................3

*Cheng v. BMW of N. Am., LLC,*
  No. CV 12-09262 GAF SHX, 2013 WL 3940815 (C.D. Cal. July 26, 2013) ..............................10

*City of Mesquite v. Aladdin's Castle,*
  455 U.S. 283 (1982) ................................................................................3

*Democratic Nat'l Comm. v. Trump,*
  No. 1:25-cv-952-CKK (D.D.C. filed Mar. 31, 2025) ...........................................2, 7

*FBI v. Fikre,*
  601 U.S. 234 (2024).................................................................................3, 5, 7

*First Indiana Fed. Sav. Bank v. F.D.I.C.,*
  964 F.2d 503 (5th Cir. 1992)......................................................................10

*Freedom from Religion Found., Inc. v. Abbott,*
  58 F.4th 824 (5th Cir. 2023)......................................................................4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
  528 U.S. 167 (2000)......................................................................................3

*In re Blast Energy Servs., Inc.,*
  593 F.3d 418 (5th Cir. 2010)......................................................................9

*In re Hilal,*
  534 F.3d 498 (5th Cir. 2008) ......................................................................9

*Landers v. United States,*
  No. 3:20-CV-00455-G, 2021 WL 779073 (N.D. Tex. Mar. 1, 2021)........................................10

*League of Women Voters v. U.S. Dep't of Homeland Sec.,*
  No. 1:25-cv-03501-SLS, 2025 WL 3198970 (D.D.C., Nov. 17, 2025) .................................2, 6, 7

*Matter of Manges*,
   29 F.3d 1034 (5th Cir. 1994) ...................................................................................... 9

*Murphy v. Hunt*,
   455 U.S. 478 (1982) ................................................................................................... 2

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009) ..................................................................................... 4

*Staton Techiya, LLC v. Samsung Electronics Co.*,
   757 F.Supp.3d 697 (E.D. Tex. 2024) ...................................................................3, 10

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
   142 F.4th 819 (5th Cir. 2025) ...............................................................................4, 5, 9

*Tex. Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*,
   No. 4:08-CV-451, 2015 WL 13469928 (E.D. Tex. Jan. 26, 2015) ..........................3, 10

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ...................................................................................................5

**STATUTES**

8 U.S.C. § 1373(c) ........................................................................................... 4, 6, 11

**RULES & REGULATIONS**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 2

Plaintiffs the Attorney General of Texas and the Secretary of State of Texas (collectively "Plaintiffs") file this response in opposition to Defendants' December 23, 2025 Motion to Dismiss (ECF No. 12) and would respectfully show as follows:

### INTRODUCTION AND BACKGROUND

For years Defendants maintained an inadequate and inaccessible citizenship verification system. After being sued by no less than five states over the system's deficiencies, Defendants reluctantly reformed the system. Defendants now claim the system fulfills all the requests laid out in Plaintiffs' complaint, ECF No. 1, and moots this case. Defendants are incorrect. This Court should not allow Defendants to evade judicial accountability for maintaining a legally deficient citizenship verification system by voluntarily updating the system after suit without any assurance of ongoing compliance with the law. This is particularly true because there is a very real possibility Defendants may imminently revert to using the old, inadequate system.

### STATEMENT OF FACTS NECESSARY FOR RESOLUTION

In October 2024, Plaintiffs sued Defendants for failing to timely and adequately respond to Plaintiffs' citizenship verification requests in violation of 8 U.S.C. § 1373(c). ECF No. 1. Four other states, Florida, Iowa, Ohio, and Indiana, also sued Defendants for the same reason. ECF No. 12 at 9. Only after these lawsuits began did Defendants consider updating the SAVE system. *See* ECF No. 12 at 9–10.

Nonetheless, Defendants entered into a settlement agreement with Florida, Ohio, Indiana, and Iowa ("Florida Settlement Agreement"). ECF No. 12 at 11–12. In the Florida Settlement Agreement, Defendants promise to maintain the updated SAVE system absent a modification to the agreement, unforeseen technical limitations, and so long as it is consistent with law in effect at the time of performance. ECF No. 12-3 at 6, 8. Florida, Ohio, Indiana, and Iowa can enforce the

Florida Settlement Agreement for twenty years, unless extended. ECF No. 12-3 at 9–13. Plaintiffs cannot enforce the Florida Settlement Agreement. *See* ECF No. 12-3 at 9–13. The Florida Settlement Agreement creates "no third-party beneficiary rights or any other kind of right or privilege for any person, group, or entity." ECF No. 12-3 at 8. Importantly, there are at least two present lawsuits challenging the legality of the updated SAVE system and requesting Defendants revert to using the old SAVE system. ECF No. 12 at 12 (pointing to the *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-03501-SLS, 2025 WL 3198970 (D.D.C., Nov. 17, 2025) and *Democratic Nat'l Comm. v. Trump*, No. 1:25-cv-952-CKK (D.D.C. filed Mar. 31, 2025)).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)) (internal quotations omitted). This does not mean, however, that a defendant can "automatically moot a case simply by ending its unlawful conduct once sued." *Id.* (citing *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982)). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). "That much holds for governmental defendants no less than private ones." *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

Prudential mootness is a "melange of doctrines relating to the court's discretion in matters of remedy and judicial administration." *Staton Techiya, LLC v. Samsung Electronics Co.*, 757

2

F.Supp.3d 697, 706 (E.D. Tex. 2024) (quoting *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005)).

It is a doctrine derived from equity. *Id.* (citing *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d

289, 291 (D.C. Cir. 1980)). "Under the doctrine of prudential mootness, there are circumstances

under which a controversy, not constitutionally moot, is so attenuated that considerations of

prudence and comity for coordinate branches of government counsel to stay its hand, and to

withhold relief it has the power to grant." *Id.* (quoting *Texas Advanced Optoelectronic Sols., Inc. v.

Intersil Corp.*, Case No. 4:08-CV-451, 2015 WL 13469928, at *2 (E.D. Tex. Jan. 26, 2015). "The

central inquiry in determining whether to apply the prudential mootness doctrine is whether

'circumstances [have] changed since the beginning of the litigation that forestall any occasion for

meaningful relief.'" *Id.* (quoting *Tex. Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*, No. 4:08-

CV-451, 2015 WL 13469928, at *3 (E.D. Tex. Jan. 26, 2015) ) (alteration in original).

## ARGUMENT AND AUTHORITIES

The case is not moot. Even granting Defendants the presumption of good faith,[1]

Defendants have not provided evidence sufficient to carry their burden of showing it is "absolutely

clear" Plaintiffs will not revert to using the old SAVE system. *See Already, LLC*, 568 U.S. at 91.

To the contrary, the evidence shows that it is reasonably likely Defendants will return to using the

old SAVE system. Moreover, despite the recent factual developments, the Court is still able to

---

[1] Prior to *Fikre*, the Fifth Circuit maintained a stream of case law applying a lower burden of proof to government defendants pursuant to the presumption of good faith. *E.g., Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). In 2025, in *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, the Fifth Circuit took note of an argument that *Fikre* overruled the Fifth Circuit's presumption of good faith for government actors in the voluntary cessation context but did not decide the matter as it determined the defendant had carried the "formidable burden in any event." 142 F.4th 819, 826 (5th Cir. 2025). Here, like in *Students for Fair Admissions, Inc.*, the Court need not decide whether *Fikre* overrules the presumption of good faith because even if the presumption of good faith applies, Defendants cannot carry their burden.

grant effective relief to Plaintiffs. A declaratory judgment and injunction, declaring Plaintiffs have a right to prompt responses to inquiries under 8 U.S.C. § 1373(c) and ordering Defendants to promptly provide them, would provide effectual relief to Plaintiffs by protecting their rights, rather than relying on the residual effects of independent third-party actions. That Texas ran its "entire Texas voter list" through the updated SAVE system, ECF No. 12 at 11, does not diminish the necessity of a declaration of Plaintiffs' entitlement to such information. New voters register to vote regularly, and Plaintiffs need assurance that they will have access to citizenship verification for those individuals as well. For similar reasons, prudential and equitable considerations do not warrant dismissal of this case. Therefore, the Court should deny Defendants' motion to dismiss. In the alternative, however, Plaintiffs request the Court hold proceedings in this case in abeyance pending the outcome of the related SAVE litigation.

## I.    Defendants' voluntary decision to update SAVE is insufficient to moot this case

Defendants' voluntary updates to SAVE do not moot this case. A defendant may not "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." *Fikre*, 601 U.S. at 241 (quoting *Already*, 568 U.S. at 91). "To show that a case is truly moot, a defendant must prove no reasonable expectation remains that it will return to [its] old ways." *Id.* (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)) (internal quotations omitted) (alteration in original). It is undisputed that Defendants rely on their voluntary decision in response to this and other litigation to upgrade SAVE as the basis for their motion to dismiss. ECF No. 12 at 14–19. As such, Defendants have the burden of showing that it is absolutely clear that the behavior challenged in Plaintiffs' complaint cannot reasonably be expected to recur. *Students for Fair Admissions, Inc.*, 142 F.4th at 825. Even applying the presumption of good faith, Defendants have not carried this burden. *See id.* at 826.

4

Defendants' reliance on the Florida Settlement Agreement is misplaced for several reasons. First, the Florida Settlement Agreement does not reasonably ensure Defendants will maintain the updated SAVE. In light of multiple lawsuits challenging the legality of the updated SAVE system, maintenance of the updated SAVE system is far from guaranteed absent an enforceable order from this Court. Second, the Florida Settlement Agreement is not permanent and only lasts for twenty years leaving future compliance with the law up in the air after the expiration of that Agreement. Third, Plaintiffs are not able to enforce the Florida Settlement Agreement should Defendants violate it, limiting its value to protect Plaintiffs from future injury.

The Florida Settlement Agreement does not reasonably ensure Defendants will continue to use the updated SAVE system because its promise to maintain the updated SAVE system is contingent on the Defendants' determination of whether the updated SAVE system is consistent with the United States Constitution and federal statutes in effect at the time of such performance. ECF No. 12-3 at 8. As Defendants for years ignored the statutory requirements and only conceded after this litigation was brought, such consistency is not reasonably guaranteed. Moreover, the ongoing litigation challenging the legality of the updated SAVE system further calls in to question that assurance and counsels in favor of this court retaining jurisdiction and entering a judicially enforceable order guaranteeing compliance with the law. *See* ECF No. 12 at 12. In one case, *League of Women Voters v. U.S. Dep't of Homeland Sec.*, the League of Women Voters and other plaintiffs are suing Defendants for updating SAVE. No. 1:25-cv-03501-SLS, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ("LWV Case"). There, the plaintiffs requested the court "issue a stay under the Administrative Procedure Act (APA) reverting SAVE to its functionality prior to the overhaul." *Id.* at *1. The court denied plaintiffs' request for temporary relief because the plaintiffs had not

demonstrated irreparable injury but expressed that it "is troubled by the recent changes to SAVE and doubts the lawfulness of the Government's actions." *Id.* The State of Texas filed a motion to intervene in the LWV Case, in part on the grounds that the federal defendants do not adequately represent Texas's interest in the SAVE database. ECF No. 12 at 12; State of Texas's Emergency Motion to Intervene at 8–9, *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-03501-SLS (D.D.C. Oct. 27, 2025). The court has not ruled on Texas's intervention. ECF No. 12 at 12. Texas's need to intervene in the LWV Case illustrates that absent a declaration of its right to information under § 1373(c), its rights are vulnerable to the independent actions of third parties. The D.C. District Court's concerns about the legality of the updated SAVE system illustrates that there is a very real possibility Defendants will cease using the updated SAVE system and revert to the old SAVE system. A reversion to the old SAVE system will result in Plaintiffs suffering the same harms complained of at the initiation of this suit. At least one other lawsuit is pending in the D.C. District Court also challenging the validity of the updated SAVE system under the Privacy Act. ECF No. 12 at 12 (mentioning *DNC v. Trump*, No. 25-cv-952-CKK (D.D.C.)).

Defendants' promise to vigorously defend against the lawsuits challenging the updated SAVE system is insufficient to prove that "no reasonable expectation remains" that Defendants will return to the old SAVE system. *Fikre*, 601 U.S. at 241. Even taking as true Defendants' assertion that they intend to "vigorously defend" against the suits challenging the legality of the updated SAVE system, a "vigorous defense" against the "suit" does not equate to an assurance of continued access to the updated SAVE system. And even if it did, the fact remains that if the plaintiffs in those suits prevail, Defendants will return to the old SAVE system and Plaintiffs will once again resume suffering the same injuries complained of in the first instance in this case. In at

least one case, the court has already indicated it "is troubled by the recent changes to SAVE and

doubts the lawfulness of the Government's actions." *League of Women Voters*, 2025 WL 3198970,

at \*1. This shows a reasonable possibility that the Defendant will be ordered to return to using the

old SAVE system. Moreover, the Florida Settlement Agreement provides no protection from these

other legal challenges as an order from this Court would. As such, even giving Defendants the

benefit of the doubt in their litigation positions, they have not shown that it is absolutely clear there

is no reasonable possibility of returning to the old SAVE system. *See Already, LLC*, 568 U.S. at 91.

Second, the Florida Settlement Agreement is not sufficient to moot this case because is not

permanent. In *Already LLC, v. Nike, Inc.*, the Supreme Court was asked whether Nike issuing a

covenant not to enforce a trademark against Already's existing products and any future colorable

imitations mooted Already's action to have Nike's trademark declared invalid. *Already LLC*, at 88.

The Supreme Court held that "[t]he breadth of this covenant suffices to meet the burden imposed

by the voluntary cessation test" in part because "[t]he covenant is unconditional and irrevocable."

*Id.* at 93. Moreover, the covenant did not simply prohibit Nike from filing suit, it also prohibited

"Nike from making any claim *or* any demand. It reach[ed] beyond Already to protect Already's

distributors and customers. And it cover[ed] not just current or previous designs, but any colorable

imitations." *Id.* "Given the covenant's broad language, and given that Already has asserted no

concrete plans to engage in conduct not covered by the covenant," the Court concluded "the case

is moot because the challenged conduct cannot be reasonably expected to recur." *Id.* at 95. Unlike

in *Already*, the Florida Settlement Agreement is not permanent and does not reach beyond the

parties to the agreement. ECF Nos. 12-3 at 8, 13; 12-4 at 2–3. The Florida Settlement Agreement

is only enforceable for twenty years, unless extended. ECF No. 12-3 at 9–13. Moreover, the Florida

Settlement Agreement is "not intended to create, and does not create, any third-party beneficiary rights or any other kind of right or privilege for any person group or entity" which is not a party to the settlement, such as Plaintiffs. ECF No. 12-3 at 8. The Florida Settlement Agreement provides no protection to Texas at all, much less the required assurance that the challenged conduct cannot be reasonably expected to reoccur.

Third, Plaintiffs cannot enforce the Florida Settlement Agreement. In *Already*, Already, LLC was protected from future harm by "a judicially enforceable covenant[.]" *Already, LLC*, 568 U.S. at 98. Here, unlike in *Already, LLC*, the Florida Settlement Agreement provides no protection to Plaintiffs because they have no means to enforce the Agreement. If the Florida Settlement Agreement is modified or Defendants cease complying with the Florida Settlement Agreement for whatever reason, Plaintiffs have no means to enforce it. ECF No. 12-3 at 9–13. Plaintiffs are also unable to ensure the parties to the Florida Settlement Agreement will initiate enforcement action if Defendants violate it. While Defendants certainly have a stronger mootness argument against the parties to the Florida Settlement Agreement because they have a means to enforce it, the same is not true for Plaintiffs. There is evidence of a reasonable possibility that Defendants will revert to using the old SAVE database and Plaintiffs will be powerless to rectify their harms, absent an additional suit.

A declaration of Plaintiffs' rights under 8 U.S.C. § 1373(c) and an injunction requiring Defendants to comply would provide Plaintiffs with effective relief. A case is not moot when it is possible for a court to grant effective relief. *Students for Fair Admissions, Inc.*, 142 F.4th at 824. A declaration of Plaintiffs rights would provide effectual relief because it would require Defendants to comply with the law in perpetuity and provide Plaintiffs with the citizenship information

8

regardless of what happens with the Florida Settlement Agreement or the pending lawsuits against the updated SAVE database. The Court has power to grant this effectual relief to Plaintiffs. For these reasons, the case is not moot. *See id.*

## II. The doctrine of prudential mootness does not apply

The doctrine of prudential mootness does not warrant dismissal of this case. Prudential or equitable mootness is a doctrine which has not often been applied by the Fifth Circuit outside the bankruptcy and financial context. *See, e.g., In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 (5th Cir. 2010) (analyzing equitable mootness in the bankruptcy context); *Matter of Manges*, 29 F.3d 1034, 1038-39 (5th Cir. 1994) (same); *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008) (same). In one case concerning a loan participation contract, the Fifth Circuit noted that even if the claims constituted a "case or controversy" under Article III, they "should be dismissed for prudential reasons because there is no practical purpose in requiring their adjudication on the merits" because the liabilities so exceeded the assets there would be nothing to distribute. *First Indiana Fed. Sav. Bank v. F.D.I.C.*, 964 F.2d 503, 507 (5th Cir. 1992).

Otherwise, the best descriptions of the doctrine of prudential mootness in the non-bankruptcy and financial sectors in the Fifth Circuit are from a few district court cases. *See, e.g., Staton Techiya, LLC*, 757 F. Supp. 3d at 706; *Tex. Advanced Optoelectronic Sols., Inc.*, 2015 WL 13469928, at *2-3; *Landers v. United States*, No. 3:20-CV-00455-G, 2021 WL 779073, at *2 (N.D. Tex. Mar. 1, 2021). "Unfortunately, the doctrine of prudential mootness has not been given a clear formula for application." *Landers*, 2021 WL 779073, at *2. It appears this doctrine comes into play when "it is so unlikely that the court's grant of [remedy] will actually relieve the injury[.]" *Staton Techiya, LLC*, 757 F. Supp. 3d at 706 (alteration in original). "The central inquiry in determining whether to apply the prudential mootness doctrine is whether circumstances [have] changed since

9

the beginning of the litigation that forestall any occasion for meaningful relief." *Id.* (internal quotations omitted) (alteration in original). "[T]he Fourth Circuit has recognized several factors to consider when deciding whether a case is prudentially moot: (1) the court's inability to give an effective remedy because of developed circumstances; (2) the sensitivity and/or difficulty of the dispositive issue; and (3) the likelihood that the challenged act would recur and evade review." *Tex. Advanced Optoelectronic Sols., Inc.*, 2015 WL 13469928, at *3 (quoting *Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *2 (C.D. Cal. July 26, 2013)). The core question appears to be whether the entry of an order "*will have some effect in the real world.*" *Landers*, 2021 WL 779073, at *2 (emphasis in original).

Here, prudential mootness does not support dismissal because, as addressed *supra*, the Court has the ability to grant Plaintiffs effective relief in the form of a declaratory judgment and injunction. There is evidence Plaintiffs are reasonably likely to suffer the same harm again absent judicial intervention. Granting declaratory judgment and injunctive relief for Plaintiffs would have the real-world effect of providing Plaintiffs with an enforceable judgment against Defendants and require Defendants to continue to provide the requested citizenship information regardless of the outcome of the related cases and the Florida Settlement Agreement. The core question in this suit—Plaintiffs' rights under § 1373(c)—was not answered in and is not addressed by the Florida Settlement Agreement. ECF No. 12-3 at 7–8 ("[T]his Settlement Agreement . . . shall not be construed as evidence or as an admission regarding any issues of law or fact, or regarding the truth or validity of any allegation or claim raised in this action, or as evidence or as an admission by Defendants regarding Plaintiffs' entitlement to any relief"). The dispositive issue in this case is of the utmost importance to the security of federal and state elections and issuing a declaratory

10

judgment for Plaintiffs will not raise issues of comity or separation of powers. There are few to no questions of fact involved and the question of law it is not difficult to resolve. The plain text of the statue requires Defendants to provide the relief Plaintiffs request. *See* 8 U.S.C. 1373(c).

Thus, prudential mootness does not justify dismissing this case and the Court should deny Defendants' motion. In the alternative, Plaintiffs request this Court hold the case in abeyance pending the outcome of the related SAVE litigation.

CONCLUSION

For these reasons, State Plaintiffs respectfully request the Court deny Defendants' Motion to Dismiss.

Date: January 20, 2026.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, Special Litigation Division

Respectfully submitted,

WILLIAM D. WASSDORF
Associate Deputy Attorney General for Civil
Litigation
Texas Bar No. 24103022

*/s/ Ali Thorburn*

ALI THORBURN
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
COUNSEL FOR THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on January 20, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

BRETT A. SHUMATE
Assistant Attorney General, Civil Division
ANDREW I. WARDEN
Assistant Branch Director
STEPHEN M. PEZZI
Florida Bar No. 1041279
Senior Trial Counsel
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
stephen.pezzi@usdoj.gov

COUNSEL FOR DEFENDANTS

*/s/ Ali Thorburn*

ALI THORBURN
Special Counsel

12