UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| ATTORNEY GENERAL OF TEXAS *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | No. 4:24-cv-49-DC-DF |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

STEPHEN M. PEZZI
 Senior Trial Counsel
DANIEL RIESS
 Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576 (Pezzi)
Tel: (202) 353-3098 (Riess)
Email: stephen.pezzi@usdoj.gov
Email: daniel.riess@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT.....................................................................................................................................1

CONCLUSION..................................................................................................................................6

# **TABLE OF AUTHORITIES**

*FBI v. Fikre*,
   601 U.S. 234 (2024) .................................................................................................... 1, 2, 3

*Feller v. Brock*,
   802 F.2d 722 (4th Cir. 1986) ............................................................................................. 5

*Freedom From Religion Found., Inc. v. Abbott*,
   58 F.4th 824 (5th Cir. 2023) .......................................................................................... 2, 4

*League of Women Voters v. DHS*,
   1:25-cv-3501-SLS, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ....................................... 4

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
   --- F. Supp. 3d. ---, No. 25-cv-946, 2026 WL 252420 (D.D.C. Jan. 30, 2026) ................. 4

*Matter of Fieldwood Energy LLC*,
   93 F.4th 817 (5th Cir. 2024) .............................................................................................. 6

*Mille Lacs Band of Ojibwe v. Madore*,
   128 F.4th 929 (8th Cir. 2025) ............................................................................................ 4

*Ohio v. EPA*,
   969 F.3d 306 (6th Cir. 2020) ............................................................................................. 2

*Sossamon v. Texas*,
   560 F.3d 316 (5th Cir. 2009), *aff'd on other grounds*, 563 U.S. 277 (2011) ................... 2

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................................ 6

*Texas v. HHS*,
   No. 23-cv-22-DC, 2024 WL 1493809 (W.D. Tex. Apr. 5, 2024) ...................................... 1

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .......................................................................................................... 1

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ...................................................................................................... 1, 5

*W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ............................................................................................. 5

**INTRODUCTION**

As a general matter, "when one side gives the other everything it asks for, that renders the case moot." *Texas v. HHS*, No. 23-cv-22-DC, 2024 WL 1493809, at *8 (W.D. Tex. Apr. 5, 2024) (Counts, J.). That principle decides this case. Texas does not dispute that the Department of Homeland Security (DHS) has made massive improvements to the SAVE system, which resolve all the concerns that were raised in Texas's complaint (and more). Texas also does not dispute that all "the relief requested in Texas's complaint has already been provided." Defs.' Mot. to Dismiss ("MTD") at 11, ECF No. 12. And Texas likewise does not dispute that DHS has made a "long term, judicially enforceable commitment to maintain the recent improvements to SAVE." *Id.* at 13. Accordingly, because Texas has now "secure[d] outside of litigation all the relief [it] might have won in" the courtroom, this case is moot. *FBI v. Fikre*, 601 U.S. 234, 240 (2024).

Nevertheless, although "Plaintiffs have received everything they asked for," they still refuse to "take the win," *Texas*, 2024 WL 1493809, at *8, apparently seeking a declaratory judgment about the legality of a version of SAVE that no longer exists, as well as an injunction requiring the government to do what it is already (undisputedly) doing. The problem for Texas is that, under bedrock principles of Article III of the United States Constitution, "federal courts do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). And "federal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Because this controversy has already been resolved, it should be dismissed as moot, without prejudice, in its entirety. If any similar dispute ever arises again, Texas can sue then.

**ARGUMENT**

Defendants' motion explained why this case is moot. In their response, Plaintiffs do not dispute the factual premises of Defendants' filing, nor even respond to (much less refute) anything in the sworn declaration of Brian Broderick, ECF No. 12-1. Instead, Plaintiffs offer a hodgepodge of speculative predictions about what they fear the future may hold, which they think warrants continuing to litigate this case about the legality of Biden Administration policy under the voluntary-cessation exception to mootness. But "speculation is insufficient to satisfy the voluntary-cessation exception."

*Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 834 (5th Cir. 2023). Accordingly, all of Plaintiffs' arguments lack merit, and this case should be dismissed.

**1.** As explained in Defendants' motion, the United States has now entered into a binding contractual commitment to maintain the recent improvements to SAVE indefinitely—in a settlement agreement that is enforceable by the U.S. District Court for the Northern District of Florida (Wetherell, J.) for (at least) the next 20 years. And so, even setting aside the more conventional (and now undisputed) reasons why this case is moot—*i.e.*, that the version of SAVE challenged in the complaint no longer exists, *see* MTD at 9-11, or that the government has provided all the relief requested in Texas's complaint, *see id.* at 11-12—the *Florida* agreement puts the matter beyond doubt.

Texas responds that "the *Florida* Settlement Agreement is not sufficient to moot this case because [it] is not permanent." Pls.' Opp'n to Defs.' MTD ("Opp'n") at 7, ECF No. 15. But 20 years is quite a long time—especially in a case about the capabilities of government software and database search functionality. Given the rapid pace of technological growth, it is hard to imagine that, in 20 years, Texas will be pining for the 2025 version of SAVE. Regardless, Texas cites no authority for the proposition that a "permanent" commitment is necessary to moot a case. To the contrary, the Supreme Court has said that the question is whether the challenged practice may "*reasonably* be expected to recur." *Fikre*, 601 U.S. at 241 (emphasis added) (citation omitted). And inherent in the context of "reasonabl[eness]" is that the hypothesized recurrence take place in a "reasonabl[e]" amount of time. *Id.*; *see also, e.g.*, *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020) ("[T]here must be a fair prospect that the conduct will recur *in the foreseeable future*[.]") (emphasis added). Even if Texas's speculation about what might happen in the year 2046 or later were sound, that is not recurrence "in the foreseeable future." *Ohio*, 969 F.3d at 310; *see also, e.g.*, *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (to dismiss as moot, "[w]e will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct"), *aff'd on other grounds*, 563 U.S. 277 (2011).

More importantly, Texas also misunderstands the *Florida* agreement. The substantive policy commitments in the agreement *are* permanent, in the sense that there is no expiration date for those

provisions. Broderick Decl. ¶ 32, ECF No. 12-1 ("As reflected in the *Florida* agreement, DHS agreed to ensure that all of the specified SAVE capabilities remain operational absent a modification to the agreement or unforeseen technical limitations."); *Florida* Settlement Agreement ¶ 11, ECF No. 12-3. And although the separate provisions in the settlement relating to judicial enforcement of the agreement are (presumptively) set to expire after 20 years, both the agreement and Judge Wetherell's order of dismissal explicitly contemplate requests for extension of that 20-year period, if any party "believes it necessary"—with no cap. *See Florida* Settlement Agreement ¶ 23(j); *Florida* Order at 3, ECF No. 12-4 ("A party may request that the Court extend its jurisdiction if: (1) settlement obligations are not completed within those twenty years; or (2) the party believes it necessary for the Court to continue to retain jurisdiction to enforce the parties' Settlement Agreement."). It is thus imprecise (at best) to say that the agreement "only lasts for twenty years." Opp'n at 5.

Texas next laments that it "is not a party to the settlement." *Id.* at 8. But Texas never explains why that is legally relevant to the question of mootness. And it is not—what matters is *Defendants'* future conduct, not Texas's. *See Fikre*, 601 U.S. at 243 (asking whether the defendant can "reasonably be expect to resume *its* challenged conduct") (emphasis in original). And there is no dispute that Defendants are now contractually committed to taking the very actions that Texas wants.

Texas also points to boilerplate in the agreement for compliance with federal statutes and the United States Constitution. *See* Opp'n at 5; *Florida* Settlement Agreement ¶ 17 ("Nothing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance."). But that provision is both routine and salutary—after all, the United States cannot contract around legal obligations imposed by federal statutes or the Constitution. And more generally, it is hard to understand what Texas is worried about: if federal law one day requires making changes to SAVE, then there would be no legal basis for Texas to object to those (hypothetical, future) changes—whether or not this case is still sitting on the Court's docket.

**2.** Plaintiffs next point to two cases in the U.S. District Court for the District of Columbia, speculating that, one day, those cases might conceivably result in an order that would require the

3

United States to make future changes to SAVE that Texas might not like. *See* Opp'n at 5-6 (citing *League of Women Voters v. DHS*, No. 1:25-cv-3501-SLS (D.D.C.) (Sooknanan, J.); *DNC v. Trump*, No. 25-cv-952-CKK (D.D.C.) (Kollar-Kotelly, J.). But "speculation is insufficient to satisfy the voluntary-cessation exception." *Freedom From Religion*, 58 F.4th at 834; *see also Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025) ("A speculative possibility is not a basis for retaining jurisdiction over a moot case."). So this Court need not (and should not) wager any predictions about possible future orders that might be issued by other judges in other cases pending in other jurisdictions.

In any event, Texas does not dispute that "[t]he United States is vigorously defending" both of those suits. MTD at 7; *accord* 6-7. And at least so far, Texas's doomsday predictions have not come to pass, as the government's defense of those cases has been largely successful (at least with respect to maintaining the recent improvements to SAVE). Although both Judge Kollar-Kotelly and Judge Sooknanan have raised questions about the government's *past* compliance with some of the procedural requirements of the Privacy Act—an issue that is not presented in this case—both judges have also rejected plaintiffs' requests for injunctive relief. *See League of Women Voters v. DHS*, No. 1:25-cv-3501-SLS, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) (denying motion for a preliminary injunction and a stay under 5 U.S.C. § 705); *League of United Latin Am. Citizens v. Exec. Off. of the President*, --- F. Supp. 3d. ---, No. 25-cv-946, 2026 WL 252420, at *54 (D.D.C. Jan. 30, 2026) (holding that plaintiffs' "claim for injunctive relief against the relevant changes to SAVE . . . based on the Privacy Act is moot"). And Defendants will soon make the same mootness argument to Judge Sooknanan that has already prevailed before Judge Kollar-Kotelly, among others. *See* Joint Status Report & Proposed Schedule, ECF No. 62, *League of Women Voters v. DHS*, No. 1:25-cv-3501-SLS (D.D.C. Feb. 4, 2026). So although Defendants cannot (and will not) predict what another federal judge might do in another case, it is far from clear that Texas's hypothetical concerns about future adverse court orders will ever come to pass. Regardless, because "[a] speculative possibility is not a basis for retaining jurisdiction over a moot case," *Madore*, 128 F.4th at 941; *accord Freedom From Religion*, 58 F.4th at 834, this Court should reject Texas's invitation to rely on assumptions or predictions about the possible outcome of other litigation in other courts to keep litigation alive in this one.

4

Even if Privacy Act litigation in D.C. were relevant here, it is not even clear why Texas thinks an order in *this* case will solve Texas's perceived problem. Texas's theory—which dabbles with the possibility of intentionally subjecting the United States to conflicting injunctions—is underdeveloped at best, and procedurally improper at worst. For example, Texas never grapples with the reality that an order from this Court would not bind the district courts in Washington, D.C.—just as an order from the district courts in Washington, D.C. would not bind this Court. Nor does Texas address the potential implications of the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which limits the authority of federal district courts to issue universal injunctive relief for the benefit of non-parties. So it is far from clear why Texas thinks that an order from this Court "would provide Plaintiffs with effective relief" against its fears about future orders from the District of Columbia. Opp'n at 8. Texas's failure to explain its own theory is reason enough to reject it.

In any event, to the extent that Texas hopes to use the possibility of a conflicting injunction to advance its interests, that strategy itself is inequitable and should be rejected by this Court. "Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders." *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986); *cf. W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) (reasoning that courts should generally "avoid rulings which may trench upon the authority of sister courts").[1] It would be untenable for the United States to be put in a position in which it is impossible to comply fully with all outstanding court orders. So, if that is what Texas has in mind, this Court should not endorse the tactic.

There is likewise no basis—indeed, Texas offers none—for its unexplained, one-sentence request to "hold the case in abeyance pending the outcome of the related SAVE litigation." Opp'n at 11. It is not even clear why that outcome is superior (from Texas's perspective) to dismissal without prejudice—either way, Texas will always be free to pursue judicial remedies if there is ever again a live case or controversy. But regardless, keeping a moot case on this Court's docket indefinitely is

---

[1] The United States has made the same argument in the District of Columbia litigation. *See* Defs.' Opp'n Br., ECF No. 37 at 39, *League of Women Voters v. DHS*, No. 1:25-cv-3501-SLS (D.D.C. Oct. 22, 2025); Defs.' Supp. Br., ECF No. 226 at 7, *League of United Latin Am. Citizens v. Trump*, No. 25-cv-946-CKK (D.D.C. Dec. 19, 2025).

impermissible under Article III: "if a federal court lacks jurisdiction, 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Matter of Fieldwood Energy LLC*, 93 F.4th 817, 823 (5th Cir. 2024) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). An indefinite abeyance in a moot case would be inconsistent with that principle.

**3.** Finally, Defendants also argued in the alternative that, "[a]t a minimum, . . . if the Court does not dismiss this suit," it should at least "order Texas to file a new complaint, including only Texas's claims (if any) challenging the *current* version of SAVE." MTD at 14. After all, "[i]t would make little sense for this Court to decide now whether a version of SAVE that no longer exists used to be unlawful." *Id.* On this point, Texas did not respond at all—presumably because Texas agrees that the *current* version of SAVE is both useful and lawful. *See id.* at 10-11 (quoting effusive public statements from senior Texas officials about recent improvements to SAVE). That reality further underscores the lack of any genuinely adversarial dispute for this Court to resolve. So although dismissal of this case on mootness grounds (without prejudice) is the appropriate disposition under Article III, Texas has also now forfeited any opposition to Defendants' alternative request for relief.

## CONCLUSION

For these reasons, this case should be dismissed as moot, in its entirety, for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In the alternative, at a minimum, Texas should be ordered to file an amended or supplemental complaint.

Dated: February 12, 2026                    Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General
                                              Civil Division

                                              ANDREW I. WARDEN
                                              Assistant Branch Director

                                              /s/ Stephen M. Pezzi
                                              STEPHEN M. PEZZI (Florida Bar No. 1041279)
                                               Senior Trial Counsel
                                              DANIEL RIESS
                                               Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, NW
                                              Washington, DC 20005
                                              Tel: (202) 305-8576 (Pezzi)
                                              Tel: (202) 353-3098 (Riess)
                                              Email: stephen.pezzi@usdoj.gov
                                              Email: daniel.riess@usdoj.gov

                                              *Counsel for Defendants*