**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| **ATTORNEY GENERAL OF TEXAS, SECRETARY OF STATE OF TEXAS,** *Plaintiffs,* | § § § § § § § | |
| **v.** | § § § | **P:24-CV-00049-DC** |
| **ALEJANDRO MAYORKAS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF HOMELAND SECURITY, UR M. JADDOU, IN HER OFFICIAL CAPACITY AS DIRECTOR OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES; AND U.S. CITIZENSHIP AND IMMIGRATION SERVICES,** *Defendants.* | § § § § § § § § § § § § § § § § § | |

## <u>ORDER</u>

BEFORE THE COURT is Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1).[1] Plaintiffs Attorney General of Texas and Secretary of State of Texas (collectively "Texas") sued Alejandro Mayorkas in his official capacity as Secretary of the Department of Homeland Security, the Department of Homeland Security ("DHS"), Ur Jaddou in her official capacity as Director of the United States Citizenship and Immigration Services, and the United States Citizenship and Immigration Services ("USCIS"). The complaint alleges that Defendants violated federal law by failing to respond to Plaintiffs' request to verify the citizenship and immigration

---

[1] Doc. 12.

status of over 450,000 individuals on Texas' voter roll.[2] Additionally, Plaintiffs claim Defendants unlawfully restricted Texas' access to this information by processing these requests through the Systematic Verification for Aliens Entitlement ("SAVE") program.[3] However, Defendants assert that the issue is now moot because Texas verified all 18 million voters on its voter roll and the SAVE program has been overhauled since the inception of this case.

After reviewing the briefing, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss. The Plaintiffs' claims for a writ of mandamus and injunctive relief are moot because it is undisputed that Texas verified its entire voter roll after filing the complaint. But the motion is denied as it pertains to Plaintiffs' remaining claims. However, in light of the D.C. District Court's ruling in *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. CV 25-3501 (SLS), 2026 WL 1784297 (D.D.C. June 22, 2026), the Court finds that Texas' remaining claims are not moot.

### STATUTORY BACKGROUND

Both federal and Texas law make it unlawful for a non-United States citizen to vote in an election.[4] To ensure ineligible voters are not participating in elections, federal law requires the "chief State election official" to "perform list maintenance with respect to its voter registration list."[5] Furthermore, each state is required to conduct programs to "remove

---

[2] Doc. 1.

[3] *Id.*

[4] 18 USC § 611(a); Tex. Elec. Code §§ 11.001(a)(1), (a)(2), 13.001(a)(2) (defining voter eligibility in Texas); Tex. Elec. Code § 276.018 (making it a state jail felony to lie about citizenship when registering to vote); Tex. Elec. Code § 64.012 (making it a second-degree felony for a non-U.S. citizen to case a vote).

[5] 52 U.S.C. § 21083(a)(2)(A).

the names of ineligible voters from the official lists of eligible voters."[6] In Texas, the "chief State election official" is the Secretary of State (the "Secretary").[7] The Secretary performs these duties alongside the Attorney General of Texas (the "Attorney General"), who is authorized to investigate criminal activity connected to elections.[8]

Clearing the way for states to fulfill their obligations, 8 U.S.C. § 1373 forbids federal, state, and local government entities and officials from "prohibit[ing], or in any way restrict[ing], any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."[9] The statute imposes a duty on the Immigration and Naturalization Service (now DHS) to respond to "an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[10]

## FACTUAL BACKGROUND

When Texans register to vote through the Texas Department of Public Safety, their citizenship status is automatically checked if they have a Texas driver's license or ID card from DHS and USCIS.[11] In 2024, the Secretary identified over 450,000 voters who did not use their Texas driver's license or DHS ID card to register.[12]

---

[6] 52 U.S.C. § 20507(a)(4).
[7] Tex. Elec. Code § 31.001(a).
[8] Tex. Elec. Code § 273.001(b).
[9] 8 U.S.C. § 1373(a).
[10] 8 U.S.C. § 1373(c).
[11] Doc. 1.
[12] *Id.*

On September 18, 2024, the Secretary wrote a letter to Defendant Jaddou requesting information about what procedures Texas should follow to verify the citizenship and immigration status of people on its voter roll.[13] The reply directed the Secretary to make the requests through the SAVE program.[14] On October 7, 2024, the Attorney General wrote a letter to Defendant Jaddou requesting verification of citizenship status for 450,000 individuals.[15] There was no response.[16]

Texas alleges that Defendants violated the Administrative Procedure Act by failing to respond to the October 7th letter and requiring states to use the SAVE program. Texas asks the Court to compel Defendants to respond to the Attorney General's letter, issue a declaratory judgment stating it is entitled to the requested information, and find the agency's decision to only use SAVE unlawful.[17]

## A. The SAVE Program

SAVE is a DHS-administered system "designed to help federal, state, tribal, and local government agencies confirm citizenship and immigration status prior to granting benefits and licenses, as well as for other lawful purposes."[18] In 2024, the system limited a user to one verification request at a time and USCIS charged a fee for each request.[19] Additionally, the program could not verify information on anyone who did not have a "unique DHS-issued

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. CV 25-3501 (SLS), 2026 WL 1784297, at *5 (D.D.C. June 22, 2026) (quotation removed).

[19] Doc. 1.

immigration identifier."[20]   Based on these restrictions, Texas and four other states (Florida, Ohio, Iowa, and Indiana) filed suits challenging the agency's use of the SAVE program.

While these cases were pending, the administration changed. Through a series of executive orders, President Trump promoted inter-agency data sharing to help States maintain their voter registration lists.[21]   Incorporating the shared data, DHS announced an overhaul to the SAVE program in the spring of 2025.[22] The new system "eliminates fees for database searches, breaks down silos for accurate results, streamlines mass status checks, and integrates criminal records, immigration timelines, and addresses."[23] Furthermore, the overhaul permitted uses to "create cases using a Social Security number (SSN) as the applicant's enumerator," and make verification requests in bulk.[24]

## B. The *Florida* Settlement

After the overhaul of the SAVE program, Defendants negotiated a settlement agreement with Florida, Ohio, Iowa, and Indiana. This settlement (the "*Florida* Settlement") established a judicially enforceable agreement that requires Defendants to maintain, at minimum, the following capabilities:

    a.  Free service for state, territorial, tribal, and local government agencies.
    b.  Integration with the Social Security Administration to allow searches with full Social Security numbers (SSNs) to be used as a non-DHS enumerator.
    c.  Integration with the Social Security Administration to allow searches with last-four digits SSNs to be used as a non-DHS enumerator.
    d.  The capacity to process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one.

---

[20] *Id.*
[21] Doc. 12.
[22] *Id.*
[23] *Id.*
[24] *Id.*

e. The capacity to provide data supporting each verification, and a paper verifiable output that can be relied on by the user, including but not limited to identifying the supporting document type and number queried, and issue date of citizenship where available. This information may be provided by a downloadable .csv file.

f. The capacity to obtain U.S. citizenship or immigration-status information, either within 48 hours (for initial verification) or within SAVE's estimated "Additional Verification Response Time," as reported on the SAVE website, (for additional or manual verification), when provided the following data points:

- First name and last name; and
- Date of birth; and
- At least one of the following:
  i. A government-issued immigration enumerator (e.g., A-Number/USCIS Number, SEVIS ID, I-94 Number, Naturalization/Citizenship Certificate Number, Card Number / I-797 Receipt Number, or Visa Number); or
  ii. Other government-issued enumerator permitted by SAVE (e.g., a full SSN, or the last-four-digits of an SSN).[25]

This agreement is enforceable for 20 years but a party to the settlement can extend its duration if "(1) settlement obligations are not completed within those twenty years; or (2) the party believes it necessary for the Court to continue to retain jurisdiction to enforce the parties' Settlement Agreement."[26]

Based on the terms of the settlement and the overhauling of SAVE, Defendants argue that this case is moot.

**LEGAL STANDARD**

A motion to dismiss arguing that a case is moot is properly brought under Rule 12(b)(1).[27] Article III of the United States Constitution establishes a federal court's

---

[25] Doc. 12-3.
[26] *Id.*
[27] *Beleno v. Lakey*, 306 F. Supp. 3d 930, 946 (W.D. Tex. 2009).

jurisdiction to decide "cases" and "controversies" properly before it.[28] A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[29] If a case is moot, it is "impossible for the court to grant any effectual relief" to the prevailing party.[30] But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[31]

When a defendant ceases a challenged practice, the case is not automatically moot.[32] However, such a case can become moot if the defendant shows that it is "absolutely clear"[33] that "no reasonable expectation remains that it will return to [its] old ways."[34] This applies "regardless of whether the conduct might recur immediately or later at some more propitious moment."[35] Defendants' burden is "formidable"[36] to prevent voluntary cessation from becoming a litigation strategy to defeat jurisdiction, allowing them to resume the unlawful conduct after dismissal.[37]

Even when a case is not constitutionally moot, "there are circumstances under which a controversy . . . is so attenuated that considerations of prudence and comity for coordinate

---

[28] U.S. CONST. art. III § 2.

[29] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–1 (2013) (citation modified).

[30] *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 824 (5th Cir. 2025) (citation modified).

[31] *Id.*

[32] *Already, LLC*, 568 U.S. at 91.

[33] *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022).

[34] *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024) (citation modified).

[35] *Id.* at 243.

[36] *Id.* at 241. Prior to *Fikre*, governmental actors were entitled to a presumption of good faith in cases of voluntary cessation. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). This established a lower burden for governmental actors than private actors. However, the Supreme Court's decision in *Fikre* appears to equalize this imbalance. It held that the standard for voluntary cessation "holds for governmental defendants no less than private ones." *Fikre*, 601 U.S. at 235.

[37] *See Already, LLC*, 568 U.S. at 91.

branches of government counsel to stay its hand, and to withhold relief it has the power to grant."[38] The central inquiry for prudential mootness is "whether circumstances [have] changed since the beginning of the litigation that forestall any occasion for meaningful relief."[39]

## ANALYSIS

Defendants move to dismiss Texas' claims under both constitutional and prudential mootness. They allege that Texas received all of its requested relief outside of litigation because the SAVE program was overhauled and the entire Texas voter roll was verified under the new system. Moreover, Defendants leverage the *Florida* Settlement as assurance that the SAVE program will not revert to the version addressed in the complaint. However, Texas argues that Defendants fail to meet their burden under the voluntary cessation doctrine and the relief requested in the complaint is necessary to protect the State's rights. The Court proceeds "claim by claim,"[40] as a case "may be moot as to some claims but 'live' as to others."[41]

### A. Plaintiffs' Requests for Injunctive and Mandamus Relief are Moot

The Complaint alleges that Defendants violated federal law when they failed to respond to the October 7th letter with the requested citizenship and immigration information. Texas asks the Court to order Defendants to respond to that letter. Additionally, they request a writ of mandamus for the same.

---

[38] *Staton Techiya, LLC v. Samsung Elecs. Co.*, 757 F. Supp. 3d 697, 706 (E.D. Tex. 2024).
[39] *Id.*
[40] *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 825 (5th Cir. 2025).
[41] *Fla. Bd. of Bus. Regul. v. N.L.R.B.*, 605 F.2d 916, 918 (5th Cir. 1979).

However, "when a complaining party manages to secure outside of litigation all the relief he might have won in it, the case is moot."[42] An order compelling a response to the letter will have no meaningful effect because Texas already verified the requested citizenship and immigration information. After the SAVE's overhaul, the Secretary reported that the State of Texas verified its entire voter roll—approximately 18 million registered voters— using SAVE.[43] Texas argues that this fact does not diminish the need for a declaratory judgment. While that remains to be seen, it does diminish its need for injunctive relief. Such an order will have no impact in the real world.[44] Texas now has the information it requested.

Accordingly, the Court **GRANTS** the Motion to Dismiss as to Texas' claims for injunctive and mandamus relief.

### B. Plaintiffs' Remaining Claims are not Moot

Texas' complaint  also challenges the lawfulness of the 2024 variant of the SAVE program and requests a declaratory judgment determining its entitlement to the verification information. Defendants leverage their voluntary cessation of the old SAVE program and the *Florida* Settlement to argue that these claims are also moot. The Court finds that these claims are not moot.

Texas alleges that Defendants' decision to only use the SAVE program to process verification requests violates 8 U.S.C. § 1373 (requiring Defendants to respond to requests)

---

[42] *Students for Fair Admissions, Inc.*, 142 F.4th at 824 (citation modified).

[43] Docs. 12, 15.

[44] *See Landers v. United States*, No. 3:20-CV-00455-G, 2021 WL 779073 at *2 (N.D. Tex. Mar. 1, 2021) ("The core of both Article III and remedial doctrines, in short, is a search for the possibility that granting a present determination of the issues offered, and perhaps the entry of more specific orders, will have some effect in the real world." (quotation removed).

and 8 U.S.C. § 1644 (prohibiting restrictions on access to verification information).[45] The 2024 version of SAVE could only verify a person's lawful presence in the United States, for a fee, using a unique DHS-issued immigration identifier. Texas argues that that system could not verify citizenship status and it could not verify individuals who have never encountered DHS.

The 2025 overhauls addressed all of Texas' concerns with SAVE. First, SAVE removed the fees and permitted users to make bulk verification requests. Second, it verified citizenship and immigration status for natural born and naturalized citizens. Third, the system did not require a DHS-issued identifier. Searches could be run on Social Security numbers using the full number or the last four digits. The *Florida* Settlement mandated that those changes remain in place of at least 20 years.

But the settlement is insufficient to moot the case. The Defense bears the burden to show that it is "absolutely clear" that there is no "reasonable" expectation that it will undo the overhaul of SAVE. That standard applies regardless of whether the reversion occurs immediately or "*later at some more propitious moment.*"[46] This burden explicitly contemplates scenarios in which a defendant lies in wait for long periods of time before resuming its unlawful conduct. Accordingly, the case is not moot so long as there is a reasonable expectation that the conduct will resume at *any point* in the future. While the *Florida* Settlement is enforceable for 20 years, the agreement lacks permanency.[47] Unlike the

---

[45] Doc. 1.

[46] *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024).

[47] *Contra Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013) (finding that an irrevocable and unconditional covenant was sufficient to show that there is no reasonable expectation that the allegedly unlawful conduct would recur).

permanent and unconditional covenant in *Already LLC*, the parties to the settlement are free to extend the agreement beyond the 20-year period or not. Without the agreement in place, there is nothing stopping Defendants from reinstituting the complained-of restrictions. The fact that the status quo will remain in place for 20 years offers no long-term assurances.

The doctrine does not require the Defense to dispel mere speculation about its future conduct, only those expectations that are reasonable. There must be some "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."[48] Applying that principle to government defendants, the fact that the entity has the power to reenact the allegedly unlawful policy after a case is deemed moot is not sufficient to keep the case alive by itself.[49] Here, Texas' concerns are more than mere speculation.

Texas raises concerns over related litigation in the D.C. District Court because the plaintiffs there sought to overturn the 2025 overhauls to SAVE. In *League of Women Voters v. U.S. Dep't of Homeland Sec.*, the plaintiffs sued DHS over the recent changes to SAVE, arguing that they violate the APA and the Privacy Act of 1974.[50] The suit asks the court to return the SAVE program to its "prior operational state."[51] As it turns out, Texas' concerns were well-founded. On June 22, 2026, the D.C. District Court granted the plaintiff's motion for summary judgment, setting aside and vacating the 2025 overhauls to SAVE.[52]

---

[48] *United States v. W. T. Grant Co.*, 345 U.S. 629, 633(1953).
[49] *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 826 (5th Cir. 2025).
[50] *Id.*
[51] *Id.*
[52] *League of Women Voters*, No. CV 25-3501 (SLS), 2026 WL 1784297, at *35 (D.D.C. June 22, 2026).

This decision directly conflicts with the *Florida* Settlement and calls into question the settlement's enforceability. This is especially true because federal courts "do not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy" when entering consent decrees.[53] So, even if Defendants don't do so voluntarily, they may be forced to revert to the 2024 version of SAVE. Therefore, the Court finds that Texas' remaining claims are not moot. Additionally, the Court declines to stay the case.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.[54] Texas' claims for injunctive and mandamus relief are moot and **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion to Dismiss is **DENIED** as to Texas' remaining claims.

It is so **ORDERED**.

SIGNED this 21st day of July, 2026.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[53] *League of Women Voters, et al. v. U.S. Dep't of Homeland Sec., et al.,* No. CV 25-3501 (SLS), 2026 WL 1972055, at *9 (D.D.C. July 8, 2026).
[54] Doc. 12.